# VINCENT J. ROMANO
### ATTORNEY AT LAW
**9201 4ᵀᴴ AVENUE, SUITE 704**
**BROOKLYN, NEW YORK 11209**
----------
**(718) 852-5200**

March 23, 2020

**By Email and ECF**
The Honorable I. Leo Glasser
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:    *United States v. Thomas Scorcia, et al.*, 19-cr-442 (ILG)
                Emergency Bail Application

Dear Judge Glasser:

      This letter is submitted on behalf of defendant, Thomas Scorcia, whom Anthony DiPietro, Esq., and I represent in the above-entitled case, and for the reasons set forth below, we respectfully request that Mr. Scorcia be immediately released on bond due to the COVID-19 pandemic—which greatly threatens both Mr. Scorcia's safety and ability to prepare a defense. *Cf.* 18 U.S.C. § 3142(f) (A detention hearing under 18 U.S.C. § 3142 "may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.").

      The original reasons provided for Mr. Scorcia's detention no longer take precedent under the extraordinary circumstances that have resulted from the COVID-19 pandemic. Putting aside the original supporting facts proffered in support of Mr. Scorcia's release, such as his, at the age of 53, having no criminal history and <u>*never*</u> being engaged in *actual violence*, there are now sufficient, independent extraordinary circumstances that heavily militate in favor of his release on bond. Not only is Mr. Scorcia's safety greatly threatened

by the COVID-19 outbreak, but also the current limitations of his confinement severely hamper his ability to prepare a defense in this case. [1]

As the Court is already well aware, the above referenced pandemic began to fully materialize in early March, 2020 and the Federal Bureau of Prisons has suspended all visitation at its facilities as of March 13, 2020. As of this past Saturday, the facility in which Mr. Scorcia is imprisoned (Metropolitan Detention Center (MDC)) has reported that several individuals connected to that facility have tested positive for COVID-19, including one inmate and two prison officials. *See Coronavirus updates from March 21, 2020,*[2] CBS NEWS (last visited March 22, 2020) ("The inmate is still in isolation" and "[t]wo staff members at MDC have also tested positive for coronavirus."). Such outbreak now endangers the well-being of all inmates and staff at that facility, especially those of greater age and underlying health conditions. Unfortunately, Mr. Scorcia is of those whose safety is being threatened, and he is more susceptible to succumbing to COVID-19 given his age and his family's health history.

On this score, the prosecution's recent argument of only a few days ago—trying to mitigate the seriousness of this pandemic as it relates to Mr. Scorcia's co-defendant—no longer holds true (*see* Dkt. 236). The MDC is now a facility with reported instances of infection, and "hot water and soap" (*Id.* at 2) provides no real protection to the vulnerable inmate population. The prosecution's prior suggestion that the threat to the inmate population at the MDC is mitigated at this time, defies both reality and the fact that all experts have reported that this pandemic has grown exponentially each day—leaving all in the prison population at a greater vulnerability. *See, e.g.,* Letter of Udi Ofer, Director, Justice Division American Civil Liberties Union, to William P. Barr Attorney General U.S. Department of Justice (dated March 18, 2020) (noting that "[t]he public health crisis presented by coronavirus highlights the need for the Department of Justice (DOJ) and the Bureau of Prisons (BOP) to take immediate action to safeguard the health of those under its care" and "[j]udges, probation officers, and federal law enforcement should use their discretion to ensure against an increase in incarceration, especially among those most vulnerable to coronavirus.").

Indeed, "[t]hough the BOP has admirably put transmission mitigation measures in place…in the event of an outbreak…substantial medical and security challenges would

---

[1] In addition to the above, the Government's speculative accusation that Scorcia recently became a member of LCN is not dispositive to bail. *See, e.g., United States v. Cirillo*, 499 F.2d 872 (1974); *United States v. Ciccone*, 312 F. 3d 535 (2nd Cir. 2002). It is well established that there exists no per se rule that a defendant can be detained based solely on his alleged status in LCN, and the Government's proffer of such evidence alone is insufficient to sustain a defendant's pretrial detention here. *See, e.g., Ciccone*, 312 F.3d at 543; *United States v. Cirillo*, 149 F. App'x 40, 43 (2d Cir. 2005) ("Judge Levy nevertheless recognized that there is no per se rule requiring the detention of organized crime leaders; rather, an individualized determination of the quality and quantity of the evidence of danger is appropriate.").

[2] Available at: https://www.cbsnews.com/live-updates/coronavirus-disease-covid-19-latest-news-2020-03-21/

almost certainly arise." *United States v. Dante Stephens*, No. 15-cr-95 (AJN), Dkt. No. 2798 at 3 (S.D.N.Y. Mar. 18, 2020). There can be no dispute that prisons offer the most dangerous environment where the likelihood of transmission of COVID-19 is at its highest. *See, e.g.,* Jane Wester, *Legal Aid Sues for Release of 116 NYC Inmates, Saying Coronavirus Mitigation 'Virtually Impossible' in Jails*, NY Law Journal (March 20, 2020) ("Continuing to incarcerate people who have been deemed by the CDC to be especially vulnerable to a deadly pandemic, in conditions where taking the only known steps to prevent transmission are virtually impossible, constitutes deliberate indifference to serious medical harm in violation of the United States and New York State constitutions") (quoting Corey Stoughton, Special Litigation Unit of the Legal Aid Society's Criminal Defense Practice). Plainly put, it is widely known that there are substandard medical capabilities at prisons, including at the MDC. The Government's (inaccurate) viewpoint that unlimited access to soap and hot water will overwhelm this highly contagious, airborne virus that has managed to spread all over the entire world, is dubious. The MDC does not possess the proper medical equipment to prevent the spreading of the virus (i.e., masks and ventilators), which are already a very scarce commodity for outside hospitals.

Moreover, the MDC already has an abysmal record in dealing with general crisis, and it has never faced a pandemic of this magnitude. *See, e.g.,* Annie Correal, *How We Learned About the Freezing Federal Jail in New York*, N.Y. Times (February 9, 2019) ("Our coverage of conditions at the Metropolitan Detention Center — where there was failing heat and no electricity during some of the coldest days in years — started with a desperate, anonymous tip."). To be sure, the Second Circuit recently recognized the seriousness of this new, unprecedented dilemma, when reversing summary judgment for the Bureau of Prisons in a case in which the Federal Defenders' filed a lawsuit against the MDC in regard to its past transgressions that curtailed the rights of the accused, explaining that the impact of COVID-19 on all federal prisons (including the MDC) will likely be even more grave and enduring than any past calamity:

> As we write this opinion, a different and even more dramatic challenge is presented by COVID-19, a novel and easily transmitted viral disease that has prompted a rapid reorientation of workplace practices and social life in support of public health. The impact of this recent emergency on jail and prison inmates, their counsel (in the lead, the Federal Defenders), the United States Attorneys, and the BOP, including the individual Wardens and the personnel of each facility, is just beginning to be felt. Its likely course we cannot foresee. Present information strongly suggests, however, that it may be grave and enduring.

*Fed. Defs. of N.Y., Inc. v. Fed. Bureau of Prisons*, No. 19-1778, 2020 U.S. App. LEXIS 8845 (2d Cir. Mar. 20, 2020).

Notably, several lower courts have already granted bail in cases like Mr. Scorcia due to such concerns, and in appreciation of the court's obligation to take measures to help minimize the impact that COVID-19 will have on the prison population. *See, e.g.*, *United States v. Dante Stephens*, No. 15-cr-95 (AJN), Dkt. No. 2798 at 2 (reversing prior order of detention and releasing inmate on bond because inmates may be at a heightened risk of contracting COVID-19 should an outbreak develop); *United States v. Raihan*, No. 20-cr-68 (BMC) (JO), Dkt. No. 20 at 10:12–19 (E.D.N.Y. Mar. 12, 2020) (deciding to continue a

criminal defendant on pretrial release rather than order him remanded to the Metropolitan Detention Center due, in part, to the Magistrate Judge's recognition of the fact that "[t]he more people we crowd into that facility, the more we're increasing the risk to the community"). As in these cases, Mr. Scorcia's case also warrants his release on bond for the same reasons.

Also, the prosecution's attempt to downplay the need to provide bail in these unprecedented circumstances is unavailing. Dkt. 236 at 2. In this regard, the Government's attempt to use the case of Gregory Scarpa (known as the "Grim Reaper" and "Devil"), who was released on bail due to his diagnosis of AIDS, is misplaced. Indeed, Gregory Scarpa is likely one of the most duplicitous and treacherous killers to have ever been prosecuted in federal court—and most of his killings were while Scarpa served as an FBI informant.[3] *See, e.g., People v. DeVecchio*, 2007 N.Y. Misc. LEXIS 7827, *3-4, 6 (N.Y. Sup. Ct. 2007) ("[T]he FBI shield[ed] Scarpa from prosecution for his own crimes, [and] [] actively recruited him to participate in crimes under their direction." The FBI "was willing, despite its own formal regulations to the contrary, to make their own deal with the devil. They gave [Gregory] Scarpa [a known serial killer] virtual immunity for close to 15 years in return for information, true and false, he willingly supplied."); Alan Feur, For Ex-F.B.I. Agent Accused in Murder, a Case of What Might Have Been, N.Y. TIMES (April 15, 2006) (reporting that an FBI Agent was charged with "helping a Mafia informant (Scarpa) kill at least four people"). Thus, the fact that a serial killer, like Scarpa ever made bail (on any case), only supports that bail must be granted here (during a global pandemic), as it has yet to even be shown that Mr. Scorcia committed any acts of violence.

Perhaps equally important, there now exists a real dilemma regarding the pandemic's impact on the constitutional rights of federal pretrial detainees, like Mr. Scorcia. It is now a reality that many pre-trial detainees have limited access to their counsel and are unable to prepare for their case for an extended period of time—while the COVID-19 outbreak remains a threat to all humanity. In this regard, Mr. Scorcia does not have access to unmonitored email as an inmate and counsel cannot prepare this case with Mr. Scorcia through only monitored legal calls (which will likely be ever-so more scantily granted given the enormous burden that staff is already handling with the COVID-19 outbreak). Likewise, all internal inmate movement has been suspended, thereby making it very difficult for Mr. Scorcia to self-prepare and review the voluminous electronic discovery that was provided in this case. Also, given the current outbreak, it is unrealistic to assume that all will revert back to normalcy forthwith at the facility in which Mr. Scorcia is imprisoned. Additionally, if Mr. Scorcia contracts the virus it will cause a substantial delay in this case moving forward and may require Scorcia being severed from the other RICO defendants. It would be unclear how long it would take for Scorcia to be cured from the virus, as is the case with any another person. This may cause a substantial delay in the future proceedings of this case.

---

[3] It also appears that Scarpa was sentenced in 1986 to probation by this Court in an underlying case (alleging credit card fraud), even though his guideline range was approximately 84 months. Scarpa was described by the Government as one of the biggest distributors of counterfeit credit cards in the New York metropolitan area, as well as, having a long criminal history and a reputation for violence.

Thus, Mr. Scorcia should be released on bond forthwith, while the impact that COVID-19 has had on his constitutional right to counsel and due process can still be mitigated. Indeed, 18 U.S.C. § 3142(i) provides that, where a detention order has been issued, "a judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." This is precisely the type of case that warrants such relief, as "the obstacles the current public health crisis poses to the preparation of the Defendant's defense constitute a compelling reason under 18 U.S.C. § 3142(i)." *See, e.g.*, *Dante Stephens*, No. 15-cr-95 (AJN), Dkt. No. 2798 at 4-5 (reversing prior order of detention and releasing inmate on bond because impact of recent restrictions at MDC due to COVID-19 undermine the defendant's ability to prepare his defense).

Ultimately, the need for all courts to protect the constitutional rights of the accused in these times cannot be overstated. It is in these times that the courts must act swiftly and unambiguously to ensure that the accused are afforded all basic constitutional formalities (including their right to counsel, due process of law, and personal safety—not to endorse the persistent and predictable opposition of certain prosecuting bodies that needlessly seek to threaten such needed protection. Indeed, if the accused are truly entitled to counsel during all critical stages and due process of law, it is in these times that the court must protect those rights without exception—especially at the nominal expense, of releasing a non-violent defendant (who has no criminal history), like Mr. Scorcia, with strict home-confinement, especially during a global pandemic that threatens both the accused's safety and basic constitutional rights.[4]

It is respectfully submitted that Mr. Scorcia should be accorded the same rights every other accused possesses under normal circumstances: to access their counsel, make certain and timely decisions about their case, and also review their discovery in an effective manner, remain healthy and not to contract this a potentially life-threatening virus. Especially under the current circumstances, no defendant like Mr. Scorcia should be denied those basic formalities before ever being convicted of a crime, especially due to an unanticipated health pandemic that is on an unprecedented scale and is entirely not of the accused's own making.

Finally, the corona virus has rapidly spread to 144 countries including every state in the United States. The highest number of confirmed cases in the United States is in New York with 25,665 confirmed cases. This number will, unfortunately, continue to grow. There have been 940 deaths reported worldwide as of this writing and 125 deaths reported in the United States in the last twenty-four hours.

---

[4] Given current state mandates, it is also a reality that there is no legitimate threat by releasing certain inmates, like Mr. Scorcia. In fact, only essential workers are allowed to leave their homes in New York, and 100% of all non-essential businesses are shut down until further notice. The idea that defendants like Scorcia (who have no history of violence and consent to strict supervision and home confinement) could pose a danger to the community is unrealistic. In fact, there is sadly no community to be endangered at this time (or business and personal gatherings to be had) as all of New York State and elsewhere try to salvage their personal health and those of loved ones by committing to self-isolation.

To repeat and reiterate, the virus continues to spread in the New York City area and has now invaded the M.D.C. The large quantity of inmates in close quarters at the M.D.C. will allow this highly contagious and deadly virus to spread rapidly within the facility and infect the population. An inmate who contracts the virus at the MDC will undoubtedly be placed in the special housing unit and will inhumanely suffer in isolation in a small cell, 24 hours per day, 7 days a week with a high fever, chills, respiratory problems and limited or no medical treatment.

We are respectfully requesting that Your Honor carefully consider all the underlying facts and new circumstances militating in favor of bail here, and show mercy and compassion for the health, safety, and welfare of this non-violent, pre-trial detainee who is presumed innocent—allowing Mr. Scorcia to be released on house arrest with strict supervision pending trial.

Respectfully submitted,

/s/
Vincent Romano, Esq.

/s/
Anthony DiPietro, Esq.
Law Offices of Anthony DiPietro, P.C.
15 Chester Avenue
White Plains, NY 10601

*Counsel for Thomas Scorcia*

cc: AUSA Elizabeth Geddes (via ECF)
    Anthony DiPietro, Esq. (via ECF)