

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

EAG:JPM
F. #2018R01021

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

March 26, 2020

<u>By Email and ECF</u>

The Honorable I. Leo Glasser
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Amato, <u>et</u> <u>al.</u>
                 <u>Criminal Docket No. 19-442 (S-1)(ILG)</u>

Dear Judge Glasser:

      The government respectfully submits this letter in response to defendant Thomas Scorcia's emergency motion for release on bail based principally on the existence of the COVID-19 pandemic. The defendant, an inducted member of the Colombo organized crime family of La Cosa Nostra ("the Colombo family"), is charged with serious racketeering offenses. For the reasons set forth below, the motion should be denied.

I.    <u>The Defendant Is a Danger to the Community</u>

      The defendant remains a danger to the community. As the government argued in its original detention memo (ECF Dkt. No. 21), which is incorporated by reference, as an inducted member of La Cosa Nostra, the defendant represents a particular and unique threat to his community because of the continuing nature of the enterprise he chose to join, and its unquestionable, ongoing violent activities. Notably, the defendant's motion does not attempt to rebut any of the factors the government offered in its original detention application demonstrating the defendant's dangerous just five months ago. Nothing on that front has changed. Nevertheless, the defendant's application attempts to trivialize and recast the government's overwhelming evidence of the defendant's racketeering and life in organized crime as "speculative accusation." (Def. Mtn. 2 n.1). There was simply nothing speculative about the defendant's own words from wiretaps describing his <u>own</u> extortionate conduct and loansharking. That included detailed conversations between Scoria and Joseph Amato, Sr. ("Amato"), the Colombo captain to whom Scorcia reported, speaking in coded conversation

about the defendant's induction into the Colombo crime family, attending the funeral for the former Colombo crime family boss, and even jokingly asking Amato, if the defendant would "move up in the ranks."

The actual evidence also reveals why the defendant's lack of a criminal history is meaningless. As the government previously detailed, the defendant's lack of past convictions does not speak to the breadth of his criminality. When law enforcement searched the defendant's residence last June, they found, among other items, two unregistered firearms, and in his vehicle, they found an adjustable steel baton, a ski mask, binoculars and gloves to conceal fingerprints and a book on La Cosa Nostra. Working under Amato, the defendant furthered the gratuitous violence that typified Amato's crew, all as detailed in the original detention memo. This included the defendant's December 2018 extortion of gambling business operators and his leading a group of associates to plan a retaliatory assault against co-defendant Dominick Ricigliano in January and February 2019. As part of his loansharking business, the defendant again used violence, as he recounted to a co-defendant how he and others approached a delinquent loansharking customer in an effort to physically intimidate him and that, during the incident, the customer expressed fear (through his tears) and the defendant hit him.

The defendant's argument that home confinement and the current pandemic will sideline La Cosa Nostra or other criminal groups is specious. As outlined in the Superseding Indictment and detention memo, the defendant's loansharking customers were primarily individuals. To ensure both that he could locate his debtors and that they were aware of his access to them, the defendant required the debtors to provide him with copies of their drivers' licenses and contact information. Whatever led these individuals to seek money from the defendant in the first place, such incentives have not disappeared because of COVID-19. With businesses closed, people who are desperate might unfortunately seek the assistance of loansharks like the defendant. He can run his business from his home, on a cellphone, through his associates, and, most importantly, with relative ease if he is released. He can also use criminal associates to threaten potential witnesses, as he is now fully aware of the charges against him. The defendant should not be freed to continue the work of the Colombo crime family.

II. Release Is Not Warranted Under the "Compelling Reason" Clause

The defendant argues that his age and family's health history make him "more susceptible to succumbing to COVID-19," (Def. Mot. 2), that the conditions at the Metropolitan Detention Center ("MDC") "endangers the well-being of all inmates" and that the restrictions put in place by the MDC to mitigate the spread of COVID-19 will unduly impair his ability to prepare a defense. He claims these are "compelling reasons" justifying release under 18 U.S.C. § 3142(i).

The Bail Reform Act, 18 U.S.C. § 3142(i), provides that a "judicial officer may, by subsequent order, permit the temporary release of [a] person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer

determines such release to be necessary for preparation of the person's defense or for another compelling reason." As Judge Garaufis recently noted in rejecting an application similar to the instant motion, "[t]his provision has been used sparingly to permit a defendant's release where, for example, he is suffering from a terminal illness or serious injuries." United States v. Hamilton, No. 19-CR-54-01 (NGG), 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020) (citations omitted).

The defendant, who is 53 years old, does not detail in his motion any particular health concern, such as immunodeficiency, nor does he provide any details concerning his family history that make him susceptible to COVID-19. The government, nevertheless, has contacted personnel at the MDC to obtain the defendant's health records, which indicated that the defendant did not report any ongoing health issues upon entering the MDC and has not experienced any significant health issues since he has been incarcerated at the MDC.[1]

The defendant's argument that MDC presents unmanageable risks to his health is also unfounded. The Bureau of Prisons ("BOP"), which operates the MDC, has implemented national measures to mitigate the spread of COVID-19 within prisons. See Federal Bureau of Prisons COVID-19 Action Plan, available at https://www.bop.gov/resources/news/20200313_covid-19.jsp. While the government recognizes the seriousness of COVID-19 and the increased risk to certain federal prisoners, a generalized risk alone does not justify releasing the entire Bureau of Prisons population, much less a prisoner being held for violence and racketeering charges without significant health issues. Simply residing in the MDC cannot be a basis for being released. The BOP's measures, which have been implemented in the MDC, include the following:

- Suspension of all social and legal visits: Social visits and legal visits have been suspended for 30 days, with case-by-case accommodations for attorney visits and legal calls. Inmates will be provided additional inmate telephone minutes each month.

- Inmate movement: All inmate facility transfers have been suspended for 30 days, with exceptions permitted for forensic studies or medical or mental health treatment.

- Screening and testing of inmates: All newly-arriving BOP inmates are screened for COVID-19 exposure risk factors and symptoms. Inmates with exposure risk factors are quarantined. In addition, inmates exhibiting flu-like symptoms are isolated (either to single rooms or with other patients) and tested for COVID-19 in accordance with local health authority protocols.

---

[1] The defendant briefly took an anti-inflammatory drug (naproxen/Aleve) after entering MDC. The defendant also reported a family history of hypertension but has not been prescribed any medication for that.

3

- Modified Operations: The BOP is implementing modified operations nationally to maximize social distancing and limit group gatherings in BOP facilities, as well as implementation of other modifications specific to each facility.

In addition, counsel at the MDC, after consultation with the relevant staff, has advised the government that inmates incarcerated at MDC, including the defendant, are permitted to take additional steps to self-seclude by remaining in their cells. In short, the BOP is monitoring the status of the COVID-19 virus and is taking emergency steps to ensure the safety of its staff, inmates and the public.

The defendant's assertion that "several lower courts have already granted bail in cases like Mr. Scorcia" also does not stand up to scrutiny. First, in United States v. Stephens, 2020 WL 1295155, 15 CR 95 (AJN) (S.D.N.Y. March 19, 2020), the first basis offered the district court for reversing the pretrial detention order was that "the strength of the primary evidence relied upon by the Government to demonstrate the danger the Defendant poses to the community has been undermined by new information not available to either party at the time of the [original detention hearing]" and that the new information "indicates that the Government's case is weaker than it believed to be [at the original detention hearing]." Id. at *1. Notably, the defendant there faced a violation of supervised release charge, id., and his supervised release hearing was scheduled to occur within the week. Thus, the term of the temporary release was quite short and against the backdrop that he did "not pose a danger to the community," id. at *3. The defendant here, whose trial is not imminent, is not on similar footing. Importantly, there is no new information undermining the government's prior position on the defendant's dangerousness.

Second, in United States v. Raihan, 20-CR-68 (BMC) (JO) (E.D.N.Y. March 12, 2020), Bail Hearing Transcript (ECF No. 20), at 10, which the defendant cites for the proposition that the court "continue[d] a criminal defendant on pretrial release rather than order him remanded to the [MDC]" based on "increasing risk to the community," (Def. Mot. 3-4), that defendant violated the bond issued by Magistrate Judge Orenstein within 24 hours and Magistrate Judge Bloom ordered him detained the next day. See id. ECF Dkt. No. 22: Order of Detention. There was no specific finding that being housed at MDC posed any risk that outweighed the operation of all other pertinent factors under the Bail Reform Act.

Finally, the defendant attempts to turn the tables and use the mitigation efforts put in place by BOP, principally the limitations on legal visits, to suggest they create circumstances that justify release. The defendant suggests these significant mitigation efforts make "it very difficult for Mr. Scorcia to self-prepare and review the voluminous electronic discovery that was provided in this case." (Def. Mot. 4). There is no motion schedule or trial date in this case, and the defendant's motion provides no specifics as to why he cannot review discovery materials he has already been provided. Moreover, the defendant is represented by counsel and the defendant's access to his counsel by phone remains the same as prior to the COVID-19 outbreak. The defendant has not shown any significant infringement on his ability to consult with his attorney, much less provided a reason to believe the efficacy of his defense has been adversely impacted. He also has not

demonstrated that the infringements put in place by BOP do not serve and further a "legitimate penological interest[]." Cf. Overton v. Bazzetta, 539 U.S. 126, 131–32 (2003) (upholding restrictions on prison visitation rights). They do serve such an interest, which is protecting the health of people like the defendant and the many employees who work at the MDC. All of the participants in the case, including the government attorneys, defense counsel, case agents, and defendants have been affected by COVID-19. The aim is ensure everyone lives through the pandemic and the case can return to normal pre-trial proceedings as soon as possible. The defendant, however, made choices to commit serious crimes prior to this pandemic. Those choices justified his detention, and continue to do so.

III. Conclusion

The defendant, a member of La Cosa Nostra who is charged with serious racketeering and related offenses, remains a risk to the community. His motion for emergency bail, based only on the generalized risks from COVID-19 and circumstances that are hardly unique to him, has not presented a "compelling reason" for release under Section 3142(i). Because the defendant poses a serious danger to the community, the permanent order of detention should remain in effect.

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By:    /s/
Elizabeth Geddes
James P. McDonald
Assistant U.S. Attorneys
(718) 254-6430/6376

cc: Defense Counsel (by ECF)
     Clerk of the Court (ILG) (by ECF)